IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JAIME D. PAPPE,                        Case No. 1:13-cv-01670-AA

      Plaintiff,                       OPINION AND ORDER

   v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

      Defendant.
_____

Marlene Yesquen
Black, Chapman, Webber & Stevens
221 Stewart Ave., Suite 209
Medford, OR 97501
    Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

Gerald J. Hill
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Attorneys for defendant

1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) (Act) to obtain judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Act. The decision of the Commissioner is affirmed and this case is dismissed.

## BACKGROUND

On November 18, 2009, plaintiff applied for SSI and DIB, as well as an updated application for SSI on September 29, 2010. Tr. 138-150, 165-170. Her applications were denied initially and upon reconsideration. Tr. 76-79, 80-82. On December 28, 2011, a hearing was held before an Administrative Law Judge (ALJ). Tr. 41-73. On March 30, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 21-40. On July 24, 2013, the Appeals Council denied plaintiff's request for review. Tr. 1-6. Subsequently, plaintiff filed a complaint with this Court.

Born on May 3, 1963, plaintiff was 45 years old on the alleged disability onset date. Tr. 32. Plaintiff has a high-school education and past relevant work experience as a dental assistant. Tr. 190, 202-209. Plaintiff alleges disability since August 6, 2008, due to depression, uncontrolled diabetes, fibromyalgia, and

severe panic and anxiety attacks.   Tr. 203.

<u>STANDARD OF REVIEW</u>

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).   Substantial evidence is "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted).   The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." <u>Martinez v. Heckler</u>,   807   F.2d   771,   772   (9th   Cir.   1986).   Variable interpretations   of   the   evidence   are   insignificant   if   the Commissioner's interpretation is rational.   <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

The   initial   burden   of   proof   rests   upon   the   claimant   to establish disability.   <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986).   To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The   Commissioner   has   established   a   five-step   sequential process for determining whether a person is disabled.   <u>Bowen v.</u>

3 - OPINION AND ORDER

Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner considers whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner evaluates whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must determine that the

claimant can perform other work that exists in significant numbers in the national and local economy. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

<u>THE ALJ'S FINDINGS</u>

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in "substantial gainful activity since August 6, 2008, the alleged onset date." Tr. 26. At step two, the ALJ found that plaintiff had the following severe impairments: diabetes mellitus I with peripheral neuropathy, migraines, mild depression with sleep disruption, anxiety with panic attacks, and cannabis dependency, allegedly in remission since March 2010. Tr. 27. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal the requirements of a listed impairment. Tr. 27.

Because plaintiff was not presumptively disabled at step three, the ALJ evaluated how plaintiff's impairments effected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity (RFC) to:

> perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except lift/carry up to 20 pounds occasionally and 10 pounds frequently with standing/walking up to 6 hours and sitting for up to 6 hours cumulatively in an 8-hour workday. The [plaintiff] may frequently perform complex technical work but may perform a full range of simple, routine and repetitive work with frequent contact with supervisors and the

5 - OPINION AND ORDER

general public at a stress level of 4 on a scale of 1 to 10 with 1 being, by example, the work of a night dish washer, and 10 being, by example, the work of an air traffic controller as these occupations are generally performed in the national economy.

Tr. 28-29.

At step four, the ALJ resolved that plaintiff is unable to perform her past relevant work. Tr. 32. At step five, the ALJ determined that considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as an usher, marker, or order caller. Tr. 33. The ALJ concluded that plaintiff was not disabled under the Act. Tr. 33-34.

DISCUSSION

Plaintiff argues that the ALJ erred by: 1) rejecting the medical opinion evidence of treating physicians, Drs. Shonerd and Williamson; 2) rejecting her subjective symptom testimony; 3) substituting his own opinion for that of plaintiff's treating and examining medical sources of record and making his own independent findings and speculative inferences from the medical evidence; 4) basing his decision on the incomplete opinion of the vocational expert (VE); and 5) failing to obtain responses from the VE to the cross-interrogatories submitted by plaintiff's counsel and improperly rejecting plaintiff's questions to the VE dated March 8, 2012. Pl.'s Br. 5-6.

///

I. Rejection of Treating Physicians' Opinions

Plaintiff argues that the ALJ failed to provide neither clear and convincing reasons, nor specific and legitimate reasons supported by substantial evidence in the record to reject the opinions and ultimate conclusions of Dr. Shonerd, D.O., plaintiff's treating physician, and Dr. Williamson, M.D., plaintiff's treating psychiatrist, concerning the severity of plaintiff's impairments. Pl.'s Br. 25.

Upon independent review of the record as a whole, the ALJ found that Dr. Shonerd's and Dr. Williamson's assessments of plaintiff were not entitled to controlling weight. Tr. 31-32. The ALJ found that Dr. Shonerd's and Dr. Williamson's assessments were contradicted by other doctors' opinions, as well as by their own previous records and opinions. Tr. 30-31. The ALJ also found that the doctors were acting as advocates for plaintiff and that Dr. Williamson's medical opinion was formed without the knowledge of plaintiff's longstanding cannabis use. Id.

A.    Treating Doctors' Contradicted Opinions

Plaintiff argues that the ALJ erred in relying on the records from Options for Southern Oregon. Pl.'s Reply Br. 9. This Court disagrees.

The ALJ evaluated Dr. Williamson's evidence and held that his opinion was not entitled to controlling weight. The ALJ points to Dr. Williamson's assessments of plaintiff in August  and September

7 - OPINION AND ORDER

2008, one year prior to his promise to help plaintiff get Social
Security benefits in 2009. Tr. 31.   Dr. Williamson's August 2008
assessment of plaintiff notes that she is "doing pretty well," and
"is not as good as she was for a time but, all in all, she is
holding her own."  Tr. 392.  He further found that plaintiff was
doing "wonderfully," "looking for different work," is "active and
doing things," is "getting out and going to church and doing well,"
has "weaned herself off of most of the medications," was "doing
well off of the medications," and "in general I think [plaintiff]
is holding her own and doing well."  Tr. 391-92.

     In contrast to his 2008 assessments, the ALJ points to Dr.
Williamson's  December  2010  assessment,  which  reports  that
plaintiff's "response to all medication has been poor" and has an
anxiety  related  disorder  causing  inability  to  function
independently outside of her home. Tr. 445-46.  Dr. Williamson's
2010 assessment listed 2008 as "the earliest date that the above
description of limitations applies." Id.

     The ALJ noted that  Dr. Williamson's 2010 assessment was also
in contrast to the assessment made three months later, in March
2011, at Options for Southern Oregon.  The March 2011 assessment
noted that plaintiff's conditions were again "stable on her current
medication  regimen,  and  that  [plaintiff]  is  not  interested  in
making any changes in her meds at this time."  Tr. 30, 504.
Further, in April 2011, physicians at Options for Southern Oregon

reported that plaintiff was "doing better this week . . . feels stable and in control of her emotions," and rated her depression as a 3 and her anxiety level as a 0.  Tr. 474.

The ALJ also noted that Dr. Williamson diagnosed plaintiff with agoraphobia in the December 20, 2010 assessment, while records from Options for Southern Oregon dated less than a month later, on January 5, 2011, reflect that plaintiff was not reporting sufficient symptoms for a diagnosis of social phobia or agoraphobia.  Tr. 30, 441, 502.

The medical opinion of a claimant's treating physician is entitled to "special weight" because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Rodriguez v. Bowen, 876 F.2d 759, 761 (9th Cir. 1989)(citation omitted).  To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  If a treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. Barnhart, 427 F.3d at 1216 (citing Lester, 81 F.3d at 830-31). Further, an ALJ may reject a physician's opinion if it conflicts with the physician's other findings.  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the ALJ pointed to specific and legitimate instances where Dr. Williamson's opinion contradicted his own prior opinions, as well as other doctor's opinions. Notably, Dr. Williamson's 2010 report that plaintiff's responses to all medication have been poor since 2008 directly contradicts his 2008 report, that plaintiff had weaned herself off all medications and was doing well. This 2010 report also contradicts the Options for Southern Oregon report dated three months later, stating that plaintiff is doing well on her current medications and not interested in making any changes.

Additionally, Dr. Williamson's 2010 report, that plaintiff has an anxiety related disorder and is unable to function independently outside her home, is contradicted by his 2008 report, stating that plaintiff is doing wonderfully, is looking for different work, is active and doing things, and is getting out and going to church and doing well. Further, in stark contrast to Dr. Williamson's prognosis that plaintiff's anxiety caused her inability to function outside her home, the report from Options for Southern Oregon dated four months after Dr. Williamson's report, noted that plaintiff's anxiety level was rated as a 0.

Because the ALJ pointed to specific instances where Dr. Williamson's reports were contradicted by his other findings, as well as by the records from Options for Southern Oregon, this Court finds that the ALJ properly rejected Dr. Williamson's opinions by providing specific and legitimate reasons supported by substantial

evidence.  Thus, the ALJ did not err in relying on the records from Options for Southern Oregon.

The ALJ also evaluated the evidence from Dr. Shonerd and found that his opinion was not entitled to controlling weight.  On January 14, 2011, plaintiff's treating physician, Dr. Shonerd, D.O., saw plaintiff between four and twenty times per year for the past 13 years.  Tr. 447.  Dr. Shonerd reported that plaintiff has uncontrolled insulin-dependent diabetes mellitus, severe anxiety and depression, diabetic neuropathy, migraine headaches, and recurrent herpes zoster.  Id.  Dr. Shonerd stated that plaintiff's ailments caused nerve pain, faltering levels of consciousness caused by fluctuating glucose levels, and intermittent daily chest pain.  Id.

Dr. Shonerd reported that plaintiff's symptoms were severe enough that they "frequently to constantly" interfere with the attention and concentration needed for her to perform simple work tasks and rendered her incapable of tolerating even low stress jobs.  Tr. 448.  Further, Dr. Shonerd reported that plaintiff could sit for only ten minutes, stand for thirty minutes, and walk in two-block increments for a total of more than two hours each in an eight hour day and lift ten pounds rarely but never 20 pounds.  Tr. 31, 448-49.  Dr. Shonerd, a doctor of osteopathy, based his medical opinion on "psych exam and history."  Tr. 448.

The ALJ stated Dr. Shonerd's assessments of plaintiff's

11 - OPINION AND ORDER

physical limitations were contradicted by the consultative examining physician, Dr. Nolan, M.D., Ph.D., who assessed that plaintiff "would have no restrictions on [her] ability to lift/carry, stand, walk, or sit other than having to avoid repetitive strenuous activities." Tr. 32, 419. The ALJ also noted that Dr. Shonerd's assessments are not credible because Dr. Shonerd suggests that plaintiff's "limitations/restrictions assessed have been present since August 2008 when [plaintiff] herself admitted being ready to return to work at that time." Tr. 31, 375.

Plaintiff argues that "nothing can be found to support the ALJ's assertion that claimant herself admitted being ready to work at that time." Pl.'s Reply Br. 22.

Although the contrary opinion of a non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).

Dr. Shonerd's August 2009 assessment of plaintiff states that she is "considering another run at the labor force." Tr. 375. However, Dr. Shonerd goes on to state "but of course, jobs are scarce, particularly in such a rural area where she is living." Id. Thus, the record indicates that although plaintiff was considering working, she may have been prevented from doing so due

12 - OPINION AND ORDER

to the scarcity of jobs in the rural area where she lives, not because of her physical disability. Therefore, Dr. Shonerd's own report reveals that plaintiff was considering entering the workforce at a time when he opined that she would be unable to do so.

Here, because the ALJ pointed to specific instances where Dr. Shonerd's assessments were contradicted by his own reports, as well as by the assessment of Dr. Nolan, this Court finds that the ALJ did not err in relying on the assessment of Dr. Nolan and rejecting Dr. Shonerd's assessments.

B.    Treating Doctors Acting as Advocates

The ALJ questioned the validity of the limitations and restrictions set forth in Dr. Williamson's assessment and noted the record "highly suggests that Dr. Williamson is acting as an advocate on [plaintiff's] behalf." Tr. 30. The ALJ substantiated this assertion by noting that plaintiff "told Dr. Shonerd in August 2009 that she was considering a run at the labor force, but that jobs were scarce, so she had obtained a promise from her psychiatrist (Dr. Williamson) to help her get Social Security benefits if necessary." Tr. 375.

Plaintiff argues that the ALJ incorrectly concluded that Dr. Williamson was acting as an advocate. Pl.'s Reply Br. 11. Specifically, plaintiff argues that the ALJ incorrectly attributed the part of the statement in Dr. Shonerd's August 2009 assessment

13 - OPINION AND ORDER

that "she may consider another run at the labor force, but of course, jobs are scarce, particularly in such a rural area where she is living," to Dr. Williamson.  Pl.'s Reply Br. 15, Tr. 30, 375.  Plaintiff argues that when this statement is properly attributed to Dr. Shonerd, the ALJ's conclusion that Dr. Williamson was acting as an advocate for plaintiff is unfounded and without merit.  Pl.'s Reply Br. 15.  This Court finds plaintiff's argument accurate, but ultimately not helpful.

Dr. Shonerd's August 2009 assessment states that:

> given all of this, [plaintiff] is considering applying for Social Security disability and has a promise from her psychiatrist to help her if necessary.  She may consider another run at the labor force, but of course, jobs are scarce, particularly in such a rural area where she is living.

Tr. 375.  The assessment concludes by stating "this note will serve as my support for [plaintiff] to get Social Security Disability because of this variety of issues."  Id.

An ALJ is entitled to give less weight to a physician's opinion if he reasonably concludes that the physician has stepped out of the treating role to become an advocate for his patient in presenting a meaningful petition for Social Security benefits. Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

Attributing the statement correctly to Dr. Shonerd demonstrates that the ALJ's decision is based, in part, on plaintiff's statement to Dr. Shonerd stating she "is considering applying for Social Security disability and has a promise from [Dr.

14 - OPINION AND ORDER

Williamson] to help her with this if necessary." Tr. 375. This statement suggests that Dr. Williamson has agreed to help plaintiff present a meaningful petition for Social Security benefits if it becomes necessary to do so. Thus, this Court finds that the ALJ did not err in concluding that Dr. Williamson stepped out of his treating role to become an advocate for plaintiff.

Additionally, this Court notes that the statement in Dr. Shonerd's August 2009 assessment that plaintiff "may consider another run at the labor force, but of course, jobs are scarce, particularly in such a rural area where she is living" concludes by stating "this note will serve as [Dr. Shonerd's] support for [plaintiff] to get Social Security disability because of this variety of issues." Dr. Shonerd's August 2009 assessment reveals that Dr. Shonerd factored job scarcity into his decision to support plaintiff's claim for Social Security disability. Further, the ALJ asserted that as a doctor of osteopathy, an opinion based on a psychiatric exam "appears to be beyond his area of medical expertise therefore suggesting that he too is acting as an advocate on [plaintiff's] behalf." Tr. 31.

This Court finds that the ALJ did not err by finding that Dr. Shonerd had stepped out of his treating role to become an advocate for plaintiff in presenting a meaningful petition for Social Security benefits.

///

15 - OPINION AND ORDER

C.    Plaintiff's Cannabis Use

The ALJ noted that Dr. Williamson's assessments were made without the knowledge of plaintiff's cannabis use.  Tr. 32.  The ALJ noted that plaintiff confided in the consultive examining psychologist, Dr. Shields, Ph.D., that she had never told Dr. Williamson that she was using cannabis on a daily basis during the one-year period that she was experiencing an increase in anxiety symptoms.  Tr. 31, 398.  Further, the record indicates that plaintiff "admits it would be a good idea for her prescribing physician to be aware that she is using the psychoactive substance." Tr. 398.

Plaintiff argues that her "depression and anxiety disorder requiring psychiatric care apparently existed and persisted independent of her 'daily cannabis habit.'"  Pl.'s Reply Br. 8.  Further, plaintiff contends that she "continued to need mental health treatment (psychiatric medication management and counseling) after March 2010 when she 'stopped her decades-long daily cannabis habit.'" Id.

An ALJ need not accept a medical opinion that fails to take into account a claimant's drug or alcohol use.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602-03 (9th Cir. 1999).

Here, the ALJ pointed to specific evidence in the record that indicates that plaintiff failed to inform Dr. Williamson of her ongoing drug use.  Further, the ALJ noted that Dr. Shields informed

plaintiff that using cannabis could indeed effect her anxiety
levels and the record indicates that plaintiff knew it would be a
good idea to tell her doctor that she was using cannabis, but
failed to do so. Tr. 31, 398. Thus, the ALJ did not err by taking
into consideration that Dr. Williamson's assessments were made
without the knowledge that plaintiff had been using cannabis.

## II. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ failed to make specific findings
articulating clear and convincing reasons for rejecting her
subjective symptom testimony. Pl.'s Br. 30. Specifically,
plaintiff argues that the ALJ failed to show how her ability to
carry on certain daily activities demonstrates her capacity to
persist in substantial gainful activity. Pl.'s Br. 30-33.

When a claimant has medically documented impairments that
could reasonably be expected to produce some degree of the symptoms
complained of, and the record contains no affirmative evidence of
malingering, "the ALJ can reject the claimant's testimony about the
severity of . . . symptoms only by offering specific, clear and
convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273,
1281 (9th Cir. 1996) (internal citation omitted). A general
assertion that the claimant is not credible is insufficient; the
ALJ must "state which . . . testimony is not credible and what
evidence suggests the complaints are not credible." Dodrill v.
Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered

must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

The ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. Smolen, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Id. Finally, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the alleged symptoms, and other testimony by the claimant that appears less than candid. Id. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Plaintiff stated that she suffers from mental depression, uncontrolled diabetes, fibromyalgia, severe panic and anxiety attacks, which limit her ability to work. Tr. 203.

The ALJ found, "based on a consideration of the entire case record," that plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." Tr. 29.

However, the ALJ noted that plaintiff's statements concerning intensity, persistence, and limiting effects of the symptoms "are not credible to the extent they are inconsistent with [her] RFC assessment based upon first and third party allegations of her activities of daily living." Id. Specifically, the ALJ considered the "frequency of treatment shown within treating notes, positive responses to treatment with medications, worsening of symptoms based upon daily use of cannabis until March 2010, and the opinions of treating and examining physicians concerning [plaintiff's] impairment-related limitations/restrictions." Tr. 32.

Upon examination of plaintiff's daily activities, the ALJ found that plaintiff reported getting up around 9 a.m., drinking a cup of coffee, taking medication, watching television, walking approximately 1/4 mile, doing crafts, reading, resting, gardening, or at times, "just laying around." Tr. 29. Further, the ALJ noted plaintiff's computer use on a daily basis and talking to people daily in person or on the phone. Tr. 29, 220-227.

Notably, the record revealed plaintiff's ability to leave her house to attend social gatherings during the relevant time period. For example, on February 15, 2011, plaintiff told Lynn Conner, MS, QMHP, at Options for Southern Oregon that she visited her sister in Seattle for a week, where she visited Pike's Market and was made "a little anxious" by the crowd. Tr. 489. Further, while in Seattle, plaintiff went to the Space Needle, where she "paced herself for

19 - OPINION AND ORDER

her anxiety level." Id.  Three months after her February 2011 trip
to Seattle, during another session with Lynn Conner at Options for
Southern Oregon, plaintiff told Ms. Conner that she "plans on
going with her family members to house sit for her sister in
Seattle for 2 weeks [and was] looking forward to the trip."  Tr.
472.  Also, on December 28, 2011, plaintiff testified at her
hearing before the ALJ that despite having problems sitting,
standing, and being in a crowd of people, she attended church 1 to
2 times per week during the relevant time period.  Tr. 66-67.

The ALJ also relied on the observations of plaintiff's
landlord, who had personal knowledge of plaintiff's functional
limitations.  Specifically, the ALJ noted that in December 2009,
plaintiff's landlord stated that plaintiff enjoys doing crafts and
is able to feed the cat and clean out the litter box, prepare
frozen meals and boxed foods, drive short distances, handle her own
finances, read, watch television, clean, do laundry and household
repairs, walk for miles before needing to stop and rest, and follow
instructions if they are short and simple.  Tr. 29, 212-219.
However, plaintiff's landlord indicated that plaintiff's
participation in these activities can be limited depending on her
pain, anxiety levels, and memory problems.  Id.

Finally, the ALJ noted that plaintiff was less than candid
with her examining physicians regarding her daily cannabis use
until March 2010, a time period when plaintiff was experiencing a

worsening of symptoms.   Tr. 31.   Further, as previously noted, plaintiff admits that it would have been a good idea to inform her doctor that she was using cannabis, but failed to do so.

The Court concludes that the contradictory evidence adequately supports the ALJ's negative credibility determination under the clear and convincing standard.   As such, the ALJ properly rejected plaintiff's testimony regarding the severity of her symptoms.

III. <u>Medical Evidence Inferences</u>

Plaintiff contends that the ALJ substituted his own opinion for that of plaintiff's treating and examining medical sources of record and that he made his own independent findings and speculative inferences from the medical evidence.   Pl.'s Br. 33.

Disability opinions are reserved for the Commissioner.   20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).   However, physicians may provide opinions on the ultimate issue of disability, for example, whether a claimant is capable of any work, given the claimant's limitations.   <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001).   The ALJ is not bound by the uncontroverted opinions of physicians on disability, but cannot reject them without presenting clear and convincing reasons for doing so.   <u>Reddick</u>, 157 F.3d at 725.   A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record.   <u>Id.</u>

As discussed in section I above, the ALJ properly discredited

21 - OPINION AND ORDER

the opinions of Dr. Williamson and Dr. Shonerd by presenting clear and convincing reasons. As such, the ALJ did not err by giving more weight to Dr. Nolan's opinion with regard to plaintiff's physical limitations, than he afforded plaintiff's treating physicians.

IV. <u>Adequacy of Hypothetical</u>

Plaintiff contends that: 1) the ALJ based his decision on the opinion of the VE, which was based on an incomplete hypothetical that failed to accurately reflect plaintiff's condition; 2) the ALJ disregarded the VE's answer when questioned concerning plaintiff's actual condition; 3) the ALJ failed to obtain responses from the VE to the cross-interrogatories submitted by plaintiff's counsel on March 29, 2012, in response to the ALJ's order of March 15, 2012 and improperly rejected plaintiff's questions to the VE of March 8, 2012; and 4) this was harmful error. Pl.'s Br. 33-34. This Court disagrees.

Limitations supported by substantial evidence must be incorporated into the residual functional capacity and, by extension, the dispositive hypothetical question posed to the VE. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed above, the statements by plaintiff, Dr. Williamson, and Dr. Shonerd were properly discredited by the ALJ. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to these issues, is without

22 - OPINION AND ORDER

merit. <u>Bayliss</u>, 427 F.3d at 1217-18 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper.").    Accordingly, plaintiff's argument fails.

<u>CONCLUSION</u>

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 26th day of September 2014.

_____
Ann Aiken
United States District Judge